**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Joao Cornelio, | ) | No. 08-0538-PHX-JAT |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Intel Corporation, | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant Intel Corporation's ("Intel") Motion for Summary Judgment (Doc. # 31). Plaintiff objected to the Motion in his Response[1] (Doc. # 36) and Defendant filed a Reply (Doc. # 37). The Court has reviewed the parties' filings and now rules on the Motion.

**FACTUAL BACKGROUND**

Joao Cornelio was hired by Kokusai Semiconductor Equipment Corporation ("KSEC") on or about January 8, 1996. (Doc. # 32, Defendant's Statement of Facts,

---

[1] Though Plaintiff filed a Response opposing Defendant's Motion, he failed to include a separate statement controverting any disputed facts asserted in Defendant's Statement of Facts. *See* Local Rule 56.1(b). Furthermore, though Plaintiff disputes some of Defendant's assertions in his Response, Plaintiff points to no evidence in the record to support his position on those disputed facts. Thus, per Local Rule 56.1(b), Defendant's assertions in its Statement of Facts, which are supported by evidence in the record, will be deemed admitted by Plaintiff for the purposes of Defendant's Motion.

"DSOF" at ¶ 4). KSEC supplies semiconductor manufacturing equipment and provides related support services to its customers, which include Intel. (DSOF at ¶¶ 2-3). Throughout his time at KSEC, Cornelio worked as a non-exempt Customer Service Engineer ("CSE") and was assigned to various Intel facilities, where he provided preventative and unscheduled maintenance, training and troubleshooting, and other services related to semiconductor manufacturing equipment. (DSOF at ¶¶ 3, 6).

Cornelio has identified both Gregory Hamilton, KSEC's Intel Service Supervisor, and Robert Hale, KSEC's National Service Manager, as supervisors who "decide things" and with whom Cornelio had "regular contact." (DSOF at ¶¶ 8-9). Both Hamilton and Hale further identify Hamilton as Cornelio's immediate supervisor, with duties including "reviewing time cards, approving vacation and sick leave requests, and overseeing other day-to-day activities of the CSEs . . . ." (DSOF at ¶ 10). Additionally, KSEC provided Cornelio with his pay checks, W-2 forms, and employee benefits, including medical insurance, dental insurance, a prescription drug plan, group term life insurance, accidental death insurance, business travel insurance, short term disability, long-term disability, and matching contributions to KSEC's 401(k) plan. (DSOF at ¶¶ 11-12, 14-18).

During Cornelio's employment with KSEC, Hamilton and Hale observed problems with Cornelio's "inability to plan and schedule his time." (DSOF at ¶¶ 19-23). These observations were documented, and Cornelio did not challenge them. (Id.). Hamilton and Hale also observed other incidents involving Cornelio's willingness or ability to follow established safety procedures. (DSOF at ¶ 24). These included an incident in March 2004, during which Cornelio improperly installed two injectors on a piece of machinery at an Intel facility in Arizona. (DSOF at ¶ 25). While attempting to correct Cornelio's mistake, an Intel employee burned his hand. (Id.). Hale counseled Cornelio about the need to install correct parts, but Cornelio failed to take responsibility for his actions. (Id.).

Hamilton and Hale also met with Cornelio to discuss an unprofessional e-mail message that Cornelio had sent to two Intel employees. (DSOF at ¶¶ 26-27). At that meeting, Cornelio displayed a confrontational attitude and claimed that the Intel employees

were discriminating against him, though he did not offer "any specific instances or examples of alleged discrimination" when given the opportunity to do so. (DSOF at ¶ 27). As a result of the unprofessional e-mail message, Hamilton suspended Cornelio without pay for one week. (DSOF at ¶ 28).

In November 2005, an Intel employee at an Oregon Intel facility expressed concern about an incident in which Cornelio refused to follow proper specifications for a task known as "greasing." (DSOF at ¶ 33). In a subsequent meeting, Hale discussed with both KSEC and Intel employees the possibilities of placing Cornelio on probation, and possibly terminating him, due to his performance issues. (DSOF at ¶ 34). Hale then met with Cornelio to advise him that KSEC would place him on probation for the first quarter of 2006 because of his safety violations. (DSOF at ¶ 35). Hale further advised Cornelio that additional safety violations could lead to the termination of Cornelio's employment. (Id.).

That same month, Hale learned of an incident that occurred the prior month at a Colorado Intel facility in which Cornelio failed to follow proper Occupational Safety & Health Administration ("OSHA") safety requirements for the "lockout/tagout" ("LOTO") of a machine. (DSOF at ¶ 36). Hale again met with Cornelio to advise him of the need to follow proper OSHA standards. (DSOF at ¶¶ 37-39).

A few days later, Hale learned of another incident at the Colorado facility in which Cornelio failed to follow proper LOTO procedure. (DSOF at ¶ 40). In that incident, Cornelio left a heated tool in an unsafe condition. (Id.). The tool began to smoke when an Intel technician, who was not aware that it had been left in an unsafe condition, attempted to use the tool. (Id.). Though no harm resulted, Intel alleges that significant damage to the facility or injury to the technician could have resulted from Cornelio's oversight. (Id.). Cornelio acknowledges in his Response that he was working on the tool, but he blames the Intel technician for the incident, stating that "the person working on [a machine] at that time is responsible for it[,] not the bystanders." (Doc. # 36 at 9).

As a result of this incident, Hale met again with Cornelio to discuss the need to follow proper LOTO procedure. (DSOF at ¶ 43). Hale advised Cornelio that he had no discretion

to decide which safety procedures should be followed and also expressed concern that Cornelio did not appreciate the severity of the safety violations he had committed. (DSOF at ¶¶ 43-44). As a result of Cornelio's safety violations and other performance problems, Hale advised Cornelio at the conclusion of the meeting that his employment with KSEC was terminated. (DSOF at ¶ 44).

Cornelio filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 23, 2006. (DSOF at ¶ 54). The EEOC dismissed the charge and issued Cornelio a right-to-sue letter dated Nov. 6, 2007. (DSOF at ¶ 55). Cornelio subsequently brought this suit pursuant to Title VII of the Civil Rights Act of 1964. He states in his Complaint that he is "of black race" and alleges that his employer terminated him "because of his race, color and/or national origin in that [he] was falsely accused of a safety violation." (Complaint at ¶¶ 1, 6).

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." FED. R. CIV. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

## ANALYSIS

Intel has moved for summary judgment on Cornelio's claim. Intel first argues that the claim is frivolous because Intel was never Cornelio's employer. Intel also maintains that Cornelio has failed to carry his burden in establishing a *prima facie* case for racial discrimination. Further, Intel argues that Cornelio's actual employer, KSEC, had legitimate reasons for terminating Cornelio, and that Cornelio has not raised a triable issue of fact as to whether his termination was unlawfully motivated. Finally, Intel argues that Cornelio's claim is statutorily time-barred.

Cornelio has not established that he was in a legitimate employer-employee relationship with Intel. Though Intel concedes that it satisfies the definition of an "employer" under 28 U.S.C. § 2000e(b), the company denies any employment relationship with Cornelio. Such a relationship is essential to a Title VII claim for discrimination. *See Hishon v. King & Spalding*, 467 U.S. 69, 74 (1984) ("Once a contractual relationship of employment is established, the provisions of Title VII attach and govern certain aspects of that relationship."); *Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 929 (9th Cir. 2003) ("[Defendant's] status as an employer in its own right does not mean that a claim by the Plaintiffs, who were not [defendant's] employees, is cognizable under Title VII.").

Cornelio has admitted that KSEC, not Intel, provided his paychecks, W-2 forms, and employee benefits. (DSOF at ¶¶ 14-18). Furthermore, Cornelio identified Hale and Hamilton, who are both KSEC employees, as his immediate supervisors. (DSOF at ¶¶ 8-9). Cornelio nevertheless maintains in his Response that "Hale and Hamilton did what Intel wanted them to do every time . . . ." (Doc. # 36 at 4). He further asserts in his Response that

1 he worked "under the same rules, guidelines, and Intel supervision as Intel employees," that
2 his annual reviews "were dictated by Intel supervision," and that he "worked under total Intel
3 control." (Doc. # 36 at 1-2). However, Cornelio offers no evidence to support these
4 allegations, nor does he offer evidence to refute Intel's assertions in its Motion that "KSEC
5 alone made the decision to terminate Cornelio's employment following an in-person meeting
6 at which no Intel representatives were present." (Doc. # 31 at 8). Thus, Cornelio has not
7 established that Intel had any control over his termination, or that he was in a contractual
8 employment relationship with Intel on which his Title VII claim can legitimately be based.

Even if it is assumed that Cornelio was in a legitimate employment relationship with Intel, he has not established a *prima facie* case for racial discrimination. There are four requirements for such a case. "Specifically, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The burden then falls on the employer to produce a legitimate nondiscriminatory reason for the adverse action. *Chuang*, 225 F.3d at 1123. If the employer does so, the burden shifts back to the plaintiff to establish that the employer's given reason for termination constitutes pretext for unlawful discrimination. *Id.* at 1124.

In this case, Defendant does not dispute that Cornelio has satisfied the first three requirements of a *prima facie* case. To meet the fourth requirement, however, Cornelio is required to show that similarly situated employees received more favorable treatment, and he "must demonstrate, at the least, that [he is] similarly situated to those employees in all material respects." *Moran v. Selig*, 447 F.3d 748, 755 (9th Cir. 2006) (internal citations omitted).

Cornelio has failed to meet this burden. In his Complaint, he alleges that an Intel

employee, Michael Grossman,[2] had caused one of Cornelio's safety incidents, and that Grossman, in contrast to Cornelio, "continued to be employed by Intel Corporation without suffering similar circumstances." (Complaint at ¶ 6). However, Cornelio does not offer, in either his Complaint or in his Response, any evidence to establish that he and Grossman are similarly situated in all material respects for the purposes of this Title VII claim. Furthermore, Cornelio admits that he is unaware of any discipline that Grossman may or may not have received as a result of the safety incident. (DSOF at ¶ 51). Cornelio additionally alleges in his Response that "there were white technicians" involved in each of the safety incidents and that none of the white technicians was terminated. (Doc. # 36 at 12). However, Cornelio makes no attempt to establish that he was similarly situated to any of the white technicians. Thus, the Court has no basis for finding that Cornelio has established a *prima facie* case for racial discrimination.

Even if Cornelio had established a *prima facie* case against the proper entity, he has failed to present evidence that would establish that his termination was unlawfully motivated or that there was any pretextual reason for his termination. By offering evidence that KSEC validly terminated Cornelio for his many safety violations, Intel provides in its Motion a legitimate and nondiscriminatory motivation for Cornelio's termination. In his Response, Cornelio does not dispute that the incidents occurred, but only offers his unsupported assertions that the discipline he received in response to the incidents was unfair. In regard to his claims of racial discrimination, he does nothing more than assert his opinion that his work environment changed from one in which "he was protected from discrimination" to one in which discrimination was allowed and eventually led to his termination. (Doc. # 36 at 11). He offers no evidence of, and does not even mention, any specific instances of racial discrimination that he may have experienced. Such vague accusations are insufficient to meet the burden-shifting requirements of *McDonnell* and thus cannot withstand summary

---

[2] In his Complaint, Cornelio identifies the Intel employee as "Mark Grossman." However, in both Intel's Motion and Cornelio's Response, the same employee is identified as either "Michael Grossman" or "Mike Grossman."

judgment. *See Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 658-659 (9th Cir. 2002) (explaining that to survive a motion for summary judgment, Plaintiff's evidence demonstrating pretext must be both specific and substantial to overcome the legitimate reasons put forth by defendant).

Finally, apart from the problems with the merits of Cornelio's claim, his claim is defeated on procedural grounds. Cornelio had ninety days from the date he received his right-to-sue letter from the EEOC to bring this action. *See* 42 U.S.C. § 2000e-5(f)(1). Absent evidence to the contrary, it is presumed in the Ninth Circuit that receipt of the letter occurs three days after it is issued. *Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1125 (9th Cir. 2007). Since Cornelio's letter was issued on Nov. 6, 2007, he had ninety days from Nov. 9, 2007 to bring this suit. That ninety day period ended on February 7, 2008, but Cornelio did not file this suit until February 8, 2008. Cornelio counters in his Response that he "counted each day while procuring the necessary finances to file the case" and that he "counted ninety days when the case was [filed]." (Doc. # 36 at 11). However, he offers no evidence to support this claim. Furthermore, this assertion contradicts an earlier statement Cornelio made in his sworn deposition testimony that he did not recall the date that he received the letter. (DSOF at ¶ 56). Thus, the Court must consider his claim to be untimely.

Accordingly,

**IT IS ORDERED** granting Defendant's Motion for Summary Judgment (Doc. # 31).

DATED this 10th day of July, 2009.

James A. Teilborg
United States District Judge